O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4106 AHM (VBKx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | FUND RAISING, INC. v. ALASKANS FOR CLEAN WATER, INC. *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:      Attorneys **NOT** Present for Defendants:

**Proceedings:**    IN CHAMBERS (No Proceedings Held)

Petitioner Fund Raising Inc. ("FRI") filed this suit to compel Respondents to arbitrate a dispute between the parties. FRI's motion to compel was successful—some Respondents proceeded to arbitration voluntarily and the Court ordered the remaining Respondents to arbitration. At the conclusion of arbitration, in a remarkably detailed 59 page initial order, the arbitrator, retired Superior Court Judge G. Keith Wisot, found in favor of Respondents and awarded them over $4,000,000 in compensatory damages, punitive damages, and attorneys' fees and costs. Motion to Vacate Ex. C at 25. In accordance with the parties' arbitration agreement, the award was doubled to over eight million dollars when FRI failed to pay it within thirty days. Notice of Final Arbitration Award at 25–26, Dkt. 86.

Predictably dissatisfied with this result, FRI has filed the present motion to vacate the arbitration award.[1] A court may vacate an arbitration award only for a few narrowly circumscribed reasons. Because none of those reasons is applicable here, FRI's motion is DENIED.

## I. LEGAL STANDARD

Congress enacted the Federal Arbitration Act to overcome judicial hostility to arbitration agreements. *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Because broad judicial review would diminish the benefits of private arbitration, federal courts have only limited authority to review arbitration awards. *Kyocera Corp. v.*

---

[1] Dkt. 82.

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4106 AHM (VBKx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | FUND RAISING, INC. v. ALASKANS FOR CLEAN WATER, INC. *et al.* | | |

*Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 998 (9th Cir. 2003). "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the [FAA], which is unambiguous in this regard." *Id.* at 994. Instead, section 10 of the FAA provides the "exclusive means by which a court reviewing an arbitration award under the FAA may grant vacatur of a final arbitration award." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664 (9th Cir. 2012).

Section 10(a)(4) of the FAA permits a court to vacate an arbitration award "where the arbitrators exceeded their powers . . . ." 9 U.S.C. § 10(a)(4).[2] Under this provision, an award may not be vacated simply for "failure on the part of the arbitrators to understand and apply the law" or even for "an erroneous interpretation of the law." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007). Instead, an award may be vacated only where it is "completely irrational" or exhibits "manifest disregard" for the law. *Kyocera*, 341 F.3d at 997.

The "manifest disregard" of the law standard is extremely demanding. As an initial matter, the law in question must be "well defined, explicit, and clearly applicable." *Collins*, 505 F.3d at 880. But in addition, "[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Id.* at 879.

Similarly, the "completely irrational" standard is narrow. Despite its name, this basis for vacatur is not concerned with the internal consistency or coherence of the award. *Bosack v. Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009). Instead, it tests whether the award is rationally related to the underlying agreement. Under this standard of review, the court does not evaluate the "rightness or wrongness of the arbitrators' contract interpretation." *Id.* (internal citations omitted). An award is completely irrational only where it "fails to draw its essence from the agreement." *Id.* (citing *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461–62 (8th Cir. 2001)). "An arbitration award 'draws its essence from the agreement' if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." *Biller*, 668 F.3d at 665 (internal citations omitted).

An arbitration award may also be vacated if the relief awarded by the arbitrator is

---

[2] The other grounds specified in the FAA for vacating an award are inapplicable.

Case 2:09-cv-04106-AHM-VBK Document 96 Filed 06/26/12 Page 3 of 12 Page ID #:2135

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4106 AHM (VBKx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | FUND RAISING, INC. v. ALASKANS FOR CLEAN WATER, INC. *et al.* | | |

contrary to public policy. *Aramark Facility Services v. Service Employees International Union*, 530 F.3d 817, 823 (9th Cir. 2008). To vacate an award on this basis, a court must find that (1) an explicit, well defined, and dominant policy exists and (2) that the policy is one that specifically militates against the relief ordered by the arbitrator. *Id.* In evaluating a public policy argument, courts must focus on the *award itself*, not the behavior of the parties. *Id.* Furthermore, a court should be reluctant to vacate an arbitral award on this basis because "the finality of arbitral awards must be preserved" if arbitration is to remain a desirable alternative." *Id.* (internal citations omitted).

In deciding whether an award should be vacated, a court must accept the arbitrator's factual findings. *Aramark*, 530 F.3d at 823; *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1133 (9th Cir. 2003). This is because "[t]he parties did not bargain for the facts to be found by a court, but by an arbitrator chosen by them." *Aramark*, 530 F.3d at 823 (internal citations omitted).

## II. FACTS[3]

Respondents Alaskans for Clean Water Inc. ("AFCW"), Renewable Resources Coalition Inc. ("RRC"), and Renewable Resources Foundation Inc. ("RRF") are non-profits that are engaged in environmental advocacy. The remaining Respondents, Hackney & Hackney and Arthur Hackney, assist the non-profit Respondents in their advocacy efforts. In 2008, Respondents were involved in supporting Alaska's Ballot Measure 4, a law that would have imposed new environmental regulations on large mines in Alaska.

Respondents hired FRI to assist them. In the short term, FRI was to raise money in support of Ballot Measure 4. In the long term, FRI was to develop a financial support base for the non-profit Respondents. The parties signed a consulting agreement to that effect. That agreement contained a mandatory arbitration clause.

A few months after the parties signed the consulting agreement, the relationship between FRI and Respondents broke down and Respondents terminated the agreement. The arbitrator found that Respondents violated the consulting agreement by the timing

---

[3] These facts are taken from the arbitrator's final award, located at Docket Number 86.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4106 AHM (VBKx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | FUND RAISING, INC. v. ALASKANS FOR CLEAN WATER, INC. *et al.* | | |

and nature of their termination of the contract. But, in addition, the arbitrator found that FRI's subsequent conduct constituted unclean hands and barred FRI from recovering damages under the agreement.

After FRI was fired by Respondents, it contacted the Alaska attorneys who represented one of Respondents' opponents, a large mining partnership that would be negatively affected by Alaska's Ballot Measure 4. FRI apparently informed these attorneys that it had documents from Respondents that showed that Respondents had violated Alaska's campaign finance laws. The Alaska attorneys responded to this overture and indicated that they were interested in filing a complaint with the Alaska Public Offices Commission ("APOC"). The attorneys met FRI's sole employee and president, Robert Kaplan, and later agreed to (and did) pay $50,000 for the documents. Robert Kaplan worked with these attorneys by helping them review the documents and identify various violations of Alaska campaign laws.

The arbitrator found that Robert Kaplan perjured himself repeatedly during the arbitration proceedings. As relevant here, he found that Robert Kaplan lied about why and how he initially came to contact the Alaska attorneys. Kaplan testified that he contacted these attorneys in order to secure representation for FRI for the arbitration proceeding. But one of the Alaska attorneys contradicted Robert Kaplan's story and testified that there was no discussion of the merits of the arbitration proceedings. Instead, the whole point of the initial meeting was to interest that attorney's clients in obtaining documents that Robert Kaplan's brother, Allan, had said were in FRI's possession. Robert Kaplan also lied about the extent of his involvement with the Alaska attorneys. He claimed that he was surprised when the Alaska attorneys listed him as a consultant in the complaint before APOC. The arbitrator found that, in reality, Robert Kaplan had signed an engagement letter with these attorneys and had spent several hours working through the documents he had disclosed to the attorneys.

Based on FRI's conduct, the arbitrator concluded that FRI had unclean hands and was barred from enforcing the consulting agreement. Moreover, he ruled, FRI's conduct entitled Respondents to prevail on their counterclaims. Specifically, the arbitrator found that FRI had violated its fiduciary duties and duty of loyalty that were inherent in the consulting agreement. The arbitrator determined that FRI was liable for conversion of Respondents' proprietary information, misappropriation of trade secrets, and unjust

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4106 AHM (VBKx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | FUND RAISING, INC. v. ALASKANS FOR CLEAN WATER, INC. *et al.* | | |

enrichment.

## III.   DISCUSSION

### A.   FRI's Public Policy Arguments

FRI contends that the arbitration award violates public policy in two ways.  First, the award holds FRI liable for conduct specifically protected by California's litigation privilege.  Second, the award disregards California's public policy against contracts that bar whistleblowing.  FRI's arguments do not justify vacating the arbitration award on the basis of public policy, because when analyzed carefully it becomes clear that FRI is merely challenging the arbitrator's application of law.  As such, these challenges to the award are subject to the manifest disregard standard, not the public policy exception.  As the next section demonstrates, under that standard FRI's challenges fail.

As briefly noted above moreover, to vacate an award on the basis that it violates public policy, a federal court must find that the *relief* ordered by the arbitrator is contrary to a well-defined and dominant public policy.  For example, in *Misco*, the Supreme Court considered whether an arbitrator's ruling reinstating an employee who had been fired (ostensibly because he used marijuana on company property) would violate a public policy against the operation of dangerous machinery by persons under the influence of drugs.  *United Paperworkers Int'l Union, AFL-CIO v. Misco*, 484 U.S. 29, 42–44 (1987).  The Supreme Court chided the Court of Appeals for vacating the arbitrator's award on the basis of a public policy that was not "'ascertained by reference to the laws and legal precedents and . . . [instead] from general considerations of supposed public interests.'" *Id.* at 44 (citing *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766 (1983)).  Similarly, in *Aramark*, the Ninth Circuit considered whether a reinstatement order would violate a public policy against hiring undocumented workers.  *Aramark*, 530 F.3d at 820.  In both *Misco* and *Aramark*, the court declined to vacate the arbitration award.  In *Foster Poultry*, the Ninth Circuit examined whether an order that required an employer to bargain with a union over drug testing policy violated Department of Transportation regulations.  *United Food & Commercial Workers International Union v. Foster Poultry Farms*, 74 F.3d 169, 174–175 (9th Cir. 1995).  There, however, the court upheld the award, finding that the arbitrator's ruling requiring an employer to reinstate a discharged employee unless it engaged in further bargaining with the union did not violate a public

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4106 AHM (VBKx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | FUND RAISING, INC. v. ALASKANS FOR CLEAN WATER, INC. *et al.* | | |

policy embodied in regulations mandating random drug testing. In each of these cases—*Misco*, *Aramark*, and *Foster*—the issue was whether the *relief* ordered by the arbitrator directly conflicted with a contrary public policy or regulation. *Misco*, 484 U.S. at 42–44*; Aramark*, 530 F.3d at 820; *Foster Poultry*, 74 F.3d at 174–175.[4]

In contrast, where, as here, the challenge to an arbitration award is to the legal reasoning employed by the arbitrator—as opposed to the relief ordered by the arbitrator—the manifest disregard standard applies. *See, e.g.*, *Biller*, 668 F.3d at 667–670. There, an arbitrator awarded an employer over $2,000,000 in damages after finding that the employee-petitioner had violated his duty of confidentiality. *Id.* at 660. The employee argued before the Ninth Circuit that the award should be vacated because the arbitrator incorrectly rejected his defenses of unclean hands and equitable estoppel. *Id.* at 667–670. In rejecting this argument, the Ninth Circuit applied the manifest disregard standard, not the public policy exception. *Id. Biller* implicitly demonstrates that an attack on an arbitrator's reasoning or an argument that an arbitrator failed to give credence to an affirmative defense is evaluated under a manifest disregard standard.

### B. Manifest Disregard

FRI argues that the arbitrator manifestly disregarded the law in two ways. First, he

---

[4] At the hearing on this motion, FRI argued that *Prudential-Bache Securities, Inc. v. Tanner,* 72 F.3d 234 (1st Cir. 1995), demonstrates that the public policy exception can require overturning monetary awards if they violate a well-defined public policy. The Court has considered this out-of-circuit decision and finds it does not justify a change in this Court's conclusion. In *Tanner*, the arbitrators awarded monetary damages to former employees of Prudential who proved they were wrongfully discharged. Prudential sought to vacate the rulings on two grounds: (1) "manifest disregard" of the law (see below) and (2) that the arbitrators had found that the employees were fired because they acted against public policy by failing to keep records of securities transactions in the manner required by the securities laws. The First Circuit upheld the arbitration awards because the petitioners failed to prove that the arbitrators had even found record-keeping violations. The First Circuit explicitly stated that "[w]e need not address . . . whether these reporting requirements establish an explicit public policy such that the 'award create[s] any explicit conflict with other laws and legal precedents . . . ." *Id.* at 251 (citing *Misco*, 484 U.S. at 43). Because the court rejected the petitioner's challenge on the basis of the factual record, it was not squarely confronted with the question of whether the public policy exception requires vacating damages awards that do not directly address, much less violate, a public policy. *See id.*

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4106 AHM (VBKx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | FUND RAISING, INC. v. ALASKANS FOR CLEAN WATER, INC. *et al.* | | |

misinterpreted the consulting agreement's confidentiality clause. Second, he held that FRI violated fiduciary duties which it did not have and that are not supported by the parties' contract.

### 1. The confidentiality clause

The consulting agreement contains the following confidentiality clause:

> <u>Confidentiality</u>. Contractor shall, with respect to any information designated by Client or its member organizations as confidential, hold such information in confidence and use same only in connection with the services provided hereunder

Final Arbitration Award at 9. FRI argues that this clause applies only to documents *marked* confidential. The arbitrator, in contrast, held that the clause applied also to material that the parties *discussed* as confidential. *Id.*

The Court finds that the arbitrator's construction of the confidentiality clause was reasonable. The plain language of the clause does not require documents to be "marked" as confidential. It applies to any *information* that is *designated* confidential. It was reasonable for the arbitrator to conclude, as he did at page nine, that information was *designated* confidential when Kaplan and Respondents' representative Jameson "specifically discussed" that it was confidential.

### 2. Fiduciary duties

FRI argues that the arbitrator incorrectly found that FRI owed fiduciary duties to Respondents. FRI does not even come close to demonstrating that the arbitrator manifestly disregarded the law in making this finding. First, FRI does not identify well defined, explicit, and clearly applicable California law that establishes that fiduciary duties may not be implied by a contractual agreement. Second, FRI fails to show that the arbitrator identified the applicable law and then proceeded to ignore it. Indeed, he discussed a key case that FRI cited. Final Award at 13.

### 3. California's litigation privilege

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4106 AHM (VBKx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | FUND RAISING, INC. v. ALASKANS FOR CLEAN WATER, INC. *et al.* | | |

The arbitrator held FRI liable for disclosing confidential information to the Alaska attorneys who represented Respondents' adversaries. FRI challenges this decision on the grounds that its communications with those attorneys are protected by California's litigation privilege. But, as FRI concedes, the arbitrator found that FRI was judicially estopped from raising the litigation privilege as a defense. Motion at 15. Accordingly, FRI's burden is to show that the arbitrator manifestly disregarded the law in concluding that FRI was judicially estopped from raising this defense. It failed to do so.

First, FRI does not identify any case that explicitly holds that judicial estoppel is inapplicable to California's litigation privilege. Instead, FRI merely points to cases that, in general terms, establish that California's litigation privilege is extremely broad. This showing is insufficient. To demonstrate manifest disregard of the law, a litigant must show that the purported law was "well defined, explicit, and clearly applicable." *Collins*, 505 F.3d at 880. Because there is no explicit rule that judicial estoppel is inapplicable to the litigation privilege, FRI cannot show that the arbitrator manifestly disregarded the law.

FRI's argument fails for a second reason. Even when a clearly applicable law exists, vacatur is appropriate only where the arbitrator *correctly states* the rule and then proceeds to disregard it. Here, the arbitrator did no such thing. At most, he may have incorrectly construed the scope of judicial estoppel.

### 4. Contracts that bar whistleblowing

FRI claims that its communications with the Alaska attorneys were a form of whistleblowing. In FRI's view, the arbitrator violated California's public policy against enforcing contracts that bar whistleblowing when he held FRI liable for communicating with those attorneys.

To start with, here the parties' contract says nothing whatsoever about whistleblowing, much less bars such activity. Moreover, the arbitrator found that the claimed whistleblowing—the meetings FRI had with the Alaska attorneys— was "not to consult counsel for representation . . . but to attempt extortion in ongoing settlement talks . . . ." Finally, and perhaps more important, he concluded that FRI's disclosure of confidential information to the Alaska attorneys was not a "report to the proper

Case 2:09-cv-04106-AHM-VBK   Document 96   Filed 06/26/12   Page 9 of 12   Page ID #:2141

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4106 AHM (VBKx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | FUND RAISING, INC. v. ALASKANS FOR CLEAN WATER, INC. *et al.* | | |

authorities." Final Award at 11. To prevail, FRI must show that this conclusion manifestly disregards the law. It has not done so.

FRI points to *In re JDS Uniphase Sec. Litig.*, 238 F. Supp. 2d 1127, 1130 (N.D. Cal. 2002) for the proposition that a "report" to a private party is shielded by the public policy in favor of whistleblowing. There are at least two reasons why FRI's reliance on *JDS Uniphase* is misplaced.

First, *JDS Uniphase* was a federal securities litigation lawsuit. In construing the confidentiality provision of a contract, the court explicitly stated that it was applying *federal* and not state law. *JDS Uniphase*, 238 F. Supp. 2d at 1137. In fact, the court acknowledged that a different result was possible under state law. *Id.* ("[A] reasonable argument could be made that the Ninth Circuit would not find the confidentiality agreements at issue here to be in violation of public policy, at least under Arizona law. This Court, of course, is applying federal law."). Accordingly, *JDS Uniphase* is not "clearly applicable" to this case.

Next, the *JDS Uniphase* court invalidated the parties' confidentiality agreement only "[t]o the extent that those agreements preclude former employees from assisting in investigations of wrongdoing that have *nothing to do with trade secrets or other confidential business information.*" *Id.* (emphasis added). In this case, in contrast, the arbitrator concluded that FRI *did* disclose trade secrets and other confidential information.

Accordingly, FRI fails to show that there is an explicit and clearly applicable legal rule that contradicts the arbitrator's conclusion that Kaplan was not a legitimate whistleblower. For these reasons, he did not manifestly disregard the law.

### 5. Punitive Damages

The arbitrator awarded punitive damages to Respondents, "arising from the tort causes of action, and perjury of FRI/Kaplan." Final Award at 20. FRI argued at the hearing that this portion of the award should be vacated because punitive damages may not be based on a finding of perjury. There is no well-defined, explicit, and clearly applicable rule that prohibits basing a punitive damages award on a finding of perjury.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4106 AHM (VBKx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | FUND RAISING, INC. v. ALASKANS FOR CLEAN WATER, INC. *et al.* | | |

The record does not reveal, moreover, that the arbitrator understood the existence of any such rule and then rejected it. Indeed, there is no evidence that this so-called "rule" was ever called to the attention of the arbitrator. In fact, FRI conceded at the hearing on this motion that during arbitration it did not litigate this issue in any substantial fashion.

Under California law, punitive damages are available for tort causes of action where the defendant acted with "oppression, fraud, or malice." Cal. Civ. Code. § 3294. FRI has cited no case that holds that a finding of oppression, fraud, or malice may not be based on a finding of perjury. Instead, FRI relies on *Bosack v. Soward*, which states that "'a defendant's trial tactics and litigation conduct may not be used to impose punitive damages in a tort action.'" 586 F.3d 1096, 1105 (9th Cir. 2009) (quoting *De Anza Santa Cruz Mobile Estates Homeowners Ass'n v. De Anza Santa Cruz Mobile Estates*, 94 Cal. App. 4th 890 (2001)). *Bosack* neither explains nor applies this rule of California law. *See id.*

As to *De Anza*, there a homeowners association sued the defendant under the Mobilehome Residency Law, challenging excessive utility charges. *De Anza*, 94 Cal. App. 4th at 896. After the association prevailed on its claim, the jury awarded it punitive damages based, in part, on evidence of the defendant's "hardball" litigation tactics. *Id.* at 920. The court of appeal reversed the punitive damages award on the basis that the Mobilehome Residency Law does not permit statutory damages. *Id.* at 916. Before remanding the case, however, the court explained that on retrial evidence of the defendant's litigation tactics could not be used to support an award of punitive damages. *Id.* at 918–922. In reaching this conclusion, the court focused on two concerns. First, the court explained that "[a] lay jury is not well suited to evaluate the relative merits of a legal position taken by a party." *Id.* at 918. Second, the court noted that "pursuing authorized forms of relief before courts or other governmental tribunals is a protected right and cannot be the basis for tort liability . . . ." *Id.*

Neither of *De Anza*'s concerns is clearly implicated in this case. Here, an experienced arbitrator, not a jury, found that FRI was responsible for Kaplan's perjury. Furthermore, *De Anza* involved litigation conduct that did not include perjury. FRI argued at the hearing that the term "litigation conduct" encompasses perjury, but it has cited no cases for this proposition. In fact, *De Anza* suggests that there is a relevant distinction between litigation conduct and perjury: basing punitive damages on litigation

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4106 AHM (VBKx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | FUND RAISING, INC. v. ALASKANS FOR CLEAN WATER, INC. *et al.* | | |

conduct could improperly punish the client for the attorney's litigation strategy. *Id.* at 921 (citing *Palmer v. Ted Stevens Honda, Inc.*, 193 Cal. App. 3d 530, 539 (1987)). The same principle does not hold true for perjury, which involves the client's own conduct.

FRI has failed to present a basis to vacate the arbitrator's award of punitive damages.

### C. Complete Irrationality

#### 1. Fiduciary Duties

The arbitrator determined that FRI owed a fiduciary duty to Respondents. FRI contends that this conclusion was completely irrational with respect to the contract because the plain language of the contract does not create a fiduciary relationship between FRI and Respondents. But just because the plain language of the contract does not mention a fiduciary relationship does not mean that the arbitrator's conclusion was untethered from the contract or failed to draw its essence from the contract. As the arbitrator explained, "[n]o case cited holds that a party must agree to a fiduciary relationship; instead, that relationship is a matter of law, determined by the agreement between the parties." Final Award at 14. In other words, the arbitrator concluded that parties who enter into a contract could create a fiduciary relationship even if the contract does not explicitly say so. The arbitrator's legal conclusion in this regard was not in manifest disregard of the law. *See City of Hope Nat. Medical Center v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008) ("Before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, *or must enter into a relationship which imposes that undertaking as a matter of law*.") (emphasis added) (internal citations and alterations omitted). In short, the arbitrator did not conjure up a fiduciary relationship out of thin air, as FRI argues. To the contrary, he found that a fiduciary relationship was implied, as a matter of law, by the consulting agreement. This ruling did not "fail to draw its essence" from the parties' agreement.

#### 2. Punitive Damages

FRI contends that the punitive damages award does not draw its essence from the

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4106 AHM (VBKx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | FUND RAISING, INC. v. ALASKANS FOR CLEAN WATER, INC. *et al.* | | |

consulting agreement because the underlying perjury occurred "years after Respondents terminated the [consulting agreement]." Motion at 12. The court rejects this argument. As Respondents point out in their brief, "the punitive damages award . . . was not based solely on a finding of perjury. . . . Fairly read in the context of the rest of the award, the perjury cited by the arbitrator supports the punitive damage award not by the fact of its being perjury, but rather what [it] tells us about the Kaplans' state of mind in orchestrating the sale of FRI's clients' documents . . ." Opp. at 9–10. The Court agrees with Respondents. Once the arbitrator found that FRI violated its duties to Respondents—duties created by the consulting agreement—the arbitrator was entitled to consider Kaplan's perjury as evidence of bad faith.

## IV. CONCLUSION

For the reasons stated above, FRI's motion to vacate the arbitration award in this case is DENIED. Respondents are directed to file a [Proposed] Judgment by July 2, 2012.

|  | : |  |
|---|---|---|
| Initials of Deputy Clerk | | SMO |